**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|   |   |
|---|---|
| | : |
| JUAN E. M., | : |
| | : Civ. No. 20-4594 (KM) |
| Petitioner, | : |
| | : |
| v. | : **OPINION** |
| | : |
| THOMAS DECKER, et al., | : |
| | : |
| Respondents. | : |

_____ :

**KEVIN MCNULTY, U.S.D.J.**

In April 2020—shortly after the World Health Organization declared COVID-19 a

"global pandemic"—petitioner Juan E. M.,[1] a native and citizen of Mexico, filed a counseled

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. DE 1. When he filed, he was

an immigration detainee at the Essex County Correctional Facility ("ECCF") in Newark, New

Jersey. He alleged unconstitutional conditions of confinement and inadequate medical care

arising from ECCF's response to the COVID-19 pandemic, and sought immediate release.

In May 2020, I ordered petitioner's temporary release subject to strict conditions of

supervision. DE 14, 15. I extended the injunction in June 2020 and again in August 2020. DE 17,

28. In July 2022, having received no updates regarding petitioner's status, I ordered briefing as to

whether the petition is moot. DE 30. Petitioner filed his letter brief in August 2022 (DE 36); the

Government responded in September 2022 (DE 37); and petitioner replied in October 2022 (DE

38). For the reasons below, the preliminary injunction (DE 14, 15, 17, 28) is vacated; the petition

(DE 1) is dismissed as moot; and no certificate of appealability shall issue.

---

[1] Consistent with guidance regarding privacy concerns in social security and immigration cases by the
Committee on Court Administration and Case Management of the Judicial Conference of the United
States, the petitioner is identified herein only by his first name and last initial.

## I.    DISCUSSION

### 1.   Petitioner's Current Status

Petitioner's counsel represents that, since his release, petitioner has been residing in Queens with his fiancée (a legal permanent resident), and his U.S. citizen daughter. DE 36 at 2. He is employed in the telecommunications construction industry, and has been complying with his conditions of release, including home and telephonic visits with DHS employees, and by surrendering his passport. *Id.* His removal proceedings remain pending, with a hearing scheduled for May 2023, and he is pursuing relief based on, among other things, the hardship his removal would cause to his family. *Id.* The Government does not dispute these assertions.

### 2.   The Parties' Positions

Petitioner argues that the petition is not moot because Immigration and Customs Enforcement ("ICE") "continues to evince an intent to redetain [him] upon expiration of the preliminary injunction and once again detain him in constitutionally violative conditions, at any time, for any reason, without notice, irrespective of [his] health or the conditions of his detention." DE 36 at 1. He asserts that a live controversy exists because "[a]t the expiration of the preliminary injunction, without any misstep by Petitioner or material change in his removal proceedings, it is reasonably foreseeable that Petitioner is put back in detention that . . . puts his health at significant risk." *Id.* at 8. Petitioner contends that if he is re-detained, he is likely to be placed in Orange County Correctional Facility ("OCCF"), in Goshen, New York, a jail where "[v]arious courts found COVID-19 precautions . . . were inadequate to protect people, like Petitioner, who were at a high risk of experiencing severe illness or death as a result of a COVID-19 infection." *Id.* at 4.

2

The Government, relying on a declaration from an ICE Supervisory Detention and Deportation Officer ("SDDO"), argues as follows. First, "ICE does not have a present intention to re-detain Petitioner absent a change in circumstances such as a change in his removal status, non-compliance with release conditions, further criminal arrests, or criminal conduct." DE 37 at 2; DE 37-1 (Declaration of SDDO Carla Calidonio). Additionally, "the mere possibility that these [changed] circumstances could occur is not enough to create a live case or controversy." DE 37 at 2. This matter is moot because petitioner's claims arose from the allegedly unconstitutional conditions of confinement at ECCF; however, there is no possibility that petitioner will be detained again at ECCF because county jails in New Jersey no longer accept immigration detainees. *Id.* at 3. Petitioner's concern that he may be re-detained at OCCF in New York is speculative; even assuming "that this Court would have the authority to consider allegations or impose an injunction against the warden of a detention facility outside the State of New Jersey, decisions finding inadequate COVID-19 precautions in the spring of 2020 do not demonstrate a reasonable likelihood that Petitioner would face unconstitutional conditions of confinement relating to COVID-19 care in the event ICE detained him in that facility at some unknown point in the future." *Id.* at 3.

In response, petitioner argues that "nothing in [the Government's] papers purport to limit ICE's unbridled authority to redetain [him]." DE 38 at 2. In the alternative, "should the Court be persuaded that the Government's representation of its intent not to redetain Petitioner moots this action," then "the conditions of release specified in the Court's order granting the preliminary injunction should be vacated." *Id.* at 1. Petitioner asserts that the conditions in the preliminary injunction—specifically, the home confinement and ankle monitoring—are more restrictive than

ICE's own supervision requirements, and vacating those conditions "would not obstruct ICE from placing its standard supervision requirements." *Id.* at 3.

### 3. Applicable law

A federal court may adjudicate "only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. The parties must continue to have a personal stake in the outcome of the lawsuit. This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis*, 494 U.S. at 477–478; cleaned up). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996).

"The mootness doctrine often applies with particular force to habeas petitions filed in immigration matters." *Brown v. U.S. Dep't of Homeland Sec.*, No. 3:20-CV-0119, 2020 WL 6381457, at *2 (M.D. Pa. Oct. 30, 2020). It is well-settled that administrative action by immigration officials addressing concerns raised by an immigration detainee's habeas petition renders that petition moot. *Id.* (citing *Burke v. Gonzales*, 143 F. App'x 474 (3d Cir. 2005); *Gopaul v. McElroy*, 115 F. App'x 530 (3d Cir. 2004)). Additionally, "when a petitioner, who challenges only his ICE detention pending removal and not the validity of the removal order itself, is released from custody, the petition becomes moot because the petitioner has achieved the relief sought." *Zavalunov v. Warden of Clinton Cnty. Corr. Facility*, No. 20- 2262, 2021 WL

2338955, at *1 (M.D. Pa. May 7, 2021) (citing *DeFoy v. McCullough*, 393 F.3d 439, 441 (3d Cir. 2005)).

As a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Los Angeles County v. Davis*, 440 U.S. 625, 631, (1979) (internal citations omitted). However, "jurisdiction, properly acquired, may abate if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely eradicated the effects of the alleged violation. However, it is only when both of these conditions are satisfied that the case is moot." *Burns v. PA Dep't of Correction*, 544 F.3d 279, 283 (3d Cir. 2008) (quoting *Davis*, 440 U.S. at 631; cleaned up).

### 4. Analysis

Petitioner has received the relief he sought in the petition—release from detention. DE 1 at 3–4, 32–35. As explained below, there is no reasonable expectation that petitioner will again be detained in the alleged unconstitutional conditions at ECCF. ECCF no longer houses immigration detainees. Further, as explained below, petitioner's argument that he is likely to be re-detained and placed in another facility, such as OCCF, that allegedly "puts his health at significant risk" is speculative and thus an insufficient basis upon which to find an actual controversy. Accordingly, the case must be dismissed as moot.

First, the Government represents that petitioner will not be re-detained absent a change in circumstances. DE 37-1 (SDDO Calidonio declaration: "ICE does not have a present intention to re-detain [petitioner] absent a change in circumstances, including but not limited to changes in his removal status, non-compliance with release conditions, further criminal arrests or criminal conduct."). I accept that representation. *See also Lallave v. Martinez*, No. 22-791, 2022 WL

2338896, at *7 (E.D.N.Y. June 29, 2022) ("where the Government submits a statement that the petitioner will not be re-detained, release may well render a habeas petition moot"); *Oldaker v. Johnson*, No. 20- 00224, 2021 WL 4254864, at *8 (M.D. Ga. Sept. 17, 2021) (Petition is moot where "Respondents have filed a sworn declaration affirming that a detainee released from ICE custody may be redetained if 'new evidence indicates they are a danger or flight risk, if they fail to comply with the terms of their release, such as failing to report as scheduled or if they are scheduled for removal'" and [t]o-date, there is no evidence providing a reasonable expectation that Petitioners are under a real and immediate threat of redetention or deportation."); *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) ("The government stated in its dismissal motion that '[a]bsent Picrin's reinvolvement with the criminal justice system, a change in the Cuban government enabling him to return to Cuba, or the willingness of a third country to accept him, he will be paroled for another year.' . . . [T]he government filed a declaration of the director of the Los Angeles District Office of the INS who reiterated under oath the statement made by the government in its motion. Based on that declaration, we are satisfied that the alleged wrong will not recur."). In light of this, it would be speculative to assume that petitioner will be re-detained. *See De Melo v. Decker*, No. 20- 2643-ALC, 2021 WL 4460970, at *3 (S.D.N.Y. Sept. 28, 2021) (where petitioner "has since been released from [OCCF] after this Court granted preliminary injunctive relief," the court rejected petitioner's argument that "absent the preliminary injunction, [he] would be at risk of re-arrest and re-detention by ICE at any time, so his release does not moot the Petition"); *Basank v. Decker*, No. 20-2518, 2020 WL 1953847, at *3 (S.D.N.Y. Apr. 23, 2020) (petition rendered moot where petitioners "have not demonstrated a 'reasonable expectation' that they would be subject to rearrest while the dangerous conditions in ICE detention facilities persist"); *Alcine v. Decker*, No. 17- 3754, 2019 WL 988944, at *2

(S.D.N.Y. Feb. 19, 2019) (petition is moot where petitioner received his requested relief of release from detention, no matter that "the government has voluntarily chosen not to take Alcine back into custody, but retains the power to do so"); *Chocho v. Shanahan*, 308 F. Supp. 3d 772, 774–75 (S.D.N.Y. 2018) (where "ICE's release of Petitioner 'eradicated' the alleged violation," "[t]he mere potentiality that Petitioner may be re-detained because [ ]he is under a removal order is insufficient to warrant this Court's retention of jurisdiction over the case"); *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 493 (S.D.N.Y. 2018) ("The mere potentiality that Petitioner may be re-detained because she is under a removal order is insufficient to warrant this Court's retention of jurisdiction over the case."); *Morales-Godoy v. Green*, No. 16-4235, 2016 WL 5858655, at *1–2 (D.N.J. Oct. 4, 2016) ("Mr. Morales-Godoy is no longer in immigration detention. Thus, he has received the relief he seeks in his habeas petition. There is no reason to think that he will be placed in immigration detention again unless he violates the conditions of his supervision, a speculative state of affairs and one within Mr. Morales-Godoy's control. Accordingly, his habeas petition seeking his release from immigration detention is moot."); *cf. also Paul v. Decker*, No. 20 CIV. 2425 (KPF), 2021 WL 1947776, at *5 (S.D.N.Y. May 14, 2021) ("because Petitioner is not reasonably likely to be subjected to the same conditions of confinement even if he is re-detained, the Court need not determine whether Respondents' declaration sufficiently cabins ICE's discretion so as to render this case moot.")

Second, even assuming petitioner were reasonably likely to be re-detained, the petition focuses on the conditions at ECCF. But (1) ECCF no longer accepts immigration detainees; thus, petitioner would not be subjected to *any* conditions there, let alone the conditions he describes in his petition; and (2) not only do the claims arise out of petitioner's detention at ECCF, they arise out of the conditions at ECCF in April 2020. It is now 2.5 years later and conditions have

changed since the initial weeks of the pandemic; to state only the most obvious, vaccines have

been developed and rates of death or hospitalization have declined. In short, petitioner, if he were

to be re-detained, could not reasonably expect that he would return to the conditions described in

his petition and the violations alleged in the petition would recur.

Because petitioner is unlikely to be re-detained at ECCF, and because, even if he were,

the conditions now are not the same as when I ordered his release 2.5 years ago, there is no

longer an actual controversy for the Court to resolve. *See, e.g.*, *Paul*, 2021 WL 1947776, at *5

("The parties' briefing centers on a dispute over the scope of ICE's discretion to re-detain

Petitioner . . . . Significantly, however, Petitioner does not argue that detention is itself

unconstitutional, but rather that the specific conditions of confinement to which he was subjected

as a result of the COVID-19 pandemic are unconstitutional. As a result, the operative question is

not whether ICE retains absolute discretion to re-detain Petitioner. Instead, the Court asks

whether the purportedly unconstitutional conditions described in the Petition will persist in the

event that Petitioner is re-detained. On this record, the Court cannot conclude that those same

specific conditions will still exist if and when Petitioner were to be re-detained.").[2]

---

[2] *See also, e.g.*, *De Melo*, 2021 WL 4460970, at *4 ("[W]hile the likelihood of re-detention would have posed an actual controversy by subjecting Velesaca to the alleged unconstitutional conditions of confinement in March 2020 (which explains why this Court granted the preliminary injunction), re-detention *now or in the future* is uncertain to create the same alleged conditions. The Court is unpersuaded that—nearly 18 months after submitting the Petition and after many developments in addressing the COVID-19 pandemic in prisons and jails across the county[—]re-detention alone would warrant granting the Petition. Petitioner provides no legal support to suggest that the Petition, based on likely re-detention so long after his immediate release, would not be academic or moot.") (emphasis in original); *Paul*, 2021 WL 1947776, at *2 (there have been "extensive and fast-moving developments related to the COVID-19 pandemic . . . and . . . attendant changes in the conditions of confinement at various facilities across the county" so "there is no reasonable expectation that Petitioner will be subject to the same conditions described in the Petition." *Id.*); *Green v. Acuff*, No. 21-1037, 2021 WL 6061735, at *2 (S.D. Ill. Nov. 5, 2021) ("Green claims that if he were to contract the Delta variant of COVID-19, he is at elevated risk for serious medical complications or death due to his medical conditions. . . . Green cannot maintain a claim for relief based on the conditions of his confinement at Pulaski, because he was transferred from that facility . . . after filing his Petition. Moreover, there appears to be no chance that Green will be returned to Pulaski because Illinois facilities are no longer housing ICE detainees.").

Petitioner's argument that the case is not moot because he could be detained at OCCF in the future and be subjected to conditions that would put his health at risk is also too tenuous to support a finding of an actual controversy. DE 36 at 4 ("If [petitioner] is once again in ICE New York custody—a substantially likely scenario[—]he will once again be detained in unconstitutional conditions [at OCCF] that threaten his life."). Petitioner essentially argues that he might be re-detained and, once detained, might be placed at OCCF, and once detained and placed at OCCF, upon arrival at whatever point in the future he is placed there, he would find life-threatening unconstitutional conditions and inadequate medical care. This speculative and hypothetical chain of events that might occur at another facility does not support a reasonable expectation that the conditions described in the petition will recur. *See Gonzalez-Reyes* v. *Decker*, No. 20-2639, 2020 WL 7869549, at *12 (S.D.N.Y. Dec. 31, 2020) ("Ultimately, [the petitioner's] claims regarding the constitutional deficiency of potential future detention are speculative—based on uncertain events and conditions that may never come to pass. As a result, this matter no longer presents a case or controversy justiciable under Article III.").

In short, petitioner has already obtained the relief he sought in the petition—release from custody. As there is no further relief available to him, his habeas petition is moot. *See, e.g.*, *Nunes v. Decker*, 480 F. App'x 173, 175 (3d Cir. 2012) ("After this appeal was fully briefed, [ICE] released Nunes on an order of supervision. . . . Nunes has achieved the result he sought in his habeas petition and his change in circumstances has 'forestalled any occasion for meaningful relief.'") (quoting *Artway v. Att'y Gen.*, 81 F.3d 1235, 1246 (3d Cir.1996)); *Rixtun-Cabrera v. Doll*, No. 4:20-CV-2070, 2021 WL 5770420, at *1 (M.D. Pa. Dec. 6, 2021) ("Since the filing of the petition, Petitioner has been released from ICE custody under an order of supervision. Thus, the petition no longer presents an existing case or controversy. . . . Rixtun-Cabrera has received

the relief he sought, namely, his release from ICE detention.") (citations omitted); *Andara-Ponce v. Wolf*, No. 20- 0765, 2021 WL 4750556, at *2 (E.D. Cal. Oct. 12, 2021), *report and recommendation adopted*, 2021 WL 5179208 (E.D. Cal. Nov. 8, 2021) (where petition "challenged the legality of [petitioner's] detention pending deportation in light of the COVID-19 pandemic" and petitioner is no longer in custody, petition is moot). Accordingly, the preliminary injunction is vacated, and the petition is dismissed as moot.

## II.   CERTIFICATE OF APPEALABILITY

AEDPA provides that an appeal may not be taken from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability stating that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. I will deny a certificate of appealability because jurists of reason would not find it debatable that this petition is moot.

## III.    CONCLUSION

For the reasons stated above, the preliminary injunction (DE 14, 15, 17, 28) is vacated[3]; the petition (DE 1) is dismissed as moot; and a certificate of appealability is denied. An appropriate order follows.

DATED:  November 30, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge

---

[3] *See, e.g.*, *Brennan v. William Paterson College*, 492 F. App'x 258, 264 (3d Cir. 2012) (citing *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir.2010) ("A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves ipso facto when a final judgment is entered in the cause"); *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977) ("With the entry of the final judgment, the life of the preliminary injunction [comes] to an end, and it no longer [has] a binding effect on any one. The preliminary injunction [is] by its very nature interlocutory, tentative and impermanent.")).